**PUERTO RICO TELEPHONE
CO., INC., Plaintiff**

v.

**MUNICIPALITY OF GUAYANILLA,
et al., Defendants.**

Civil No. 02–2165(SEC).

United States District Court,
D. Puerto Rico.

Jan. 28, 2005.

Luis F. Del–Valle–Emmanuelli, Garcia & Fernandez, San Juan, PR, for Plaintiff.

Johanna M. Emmanuelli–Huertas, Alfredo Acevedo–Cruz, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Plaintiff Puerto Rico Telephone Company, Inc.'s (PRTC or Plaintiff) motion for summary judgment (Docket # 59). Defendants— Municipality of Guayanilla (the Municipality) and the Hon. Edgardo Arlequín–Vélez, then Mayor of the Municipality—duly opposed Plaintiff's motion (Docket # 60). Plaintiff replied (Docket # 63) and Defendants sur-replied (Docket # 65). Upon careful scrutiny of the parties' filings,[1] our previous Opinion and Order denying Defendants' motion to dismiss (Docket # 16), and the relevant law, we find that Plaintiff's motion must be **GRANTED.**

### Procedural Background

Plaintiff filed this action challenging an ordinance enacted by the Municipality which imposed on telecommunications service providers a monthly charge for the use of its public rights-of-way (Docket # 1). Ordinance No. 14, amended by Ordinance 40 (the Ordinance) established a monthly[2] charge of five percent (5%) of the provider's revenue for the use of public rights-of-way.[3] Defendants subsequently

---

1. Upon review of the record, the Court finds that the facts and legal arguments have been adequately presented in the parties' briefs and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will decide PRTC's motion on the record before it. Therefore, PRTC's request for oral argument (Docket # 69) is **DENIED.**

2. Under Ordinance 40, the charge is imposed on a yearly basis.

3. For a detailed description of the Ordinance as well as the parties' respective positions on its validity, see the Opinion and Order of September 17, 2003 (Docket # 16).

moved to dismiss the action arguing that the Municipality was entitled to enact such a charge (Docket # 4). On September 17, 2003 the Court denied Defendants' motion to dismiss (Docket # 16). However, in so ruling the Court also rejected to hold that the 5% fee was *per se* illegal and deferred its ruling on the legality of the ordinance until it was presented with an evidentiary record.[4] Discovery has now born its fruits. The Court is in a position to adjudge whether the Ordinance is preempted by Section 253(a) of the Federal Telecommunications Act, 47 U.S.C. § 253(a), and Law No. 213 of September 12, 1996, 27 P.R. Laws Ann. §§ 265 *et seq.* (Law 213) and, in turn, whether it falls under the safe harbor provision contained in Section 253(c) of the Telecom Act.

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such

---

**4.** Also pending before the Court is Plaintiff's supplemental motion for reconsideration of this ruling (Docket # 42). Because we are finding in Plaintiff's favor on its motion for summary judgment, Plaintiff's pending supplemental motion for reconsideration is hereby deemed as **MOOT**.

as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

■ Local Rule 56(b),[5] moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

## Applicable Law and Analysis

■ Before delving into the matter before us, we emphasize that the standard of review for motions for summary judgment does not alter the underlying allocation of the burden of proof established by federal law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Section 253(c) of the Telecom Act is a "savings clause that a local government may raise as an affirmative defense"; therefore, "[t]he fact that the local government ultimately bears the burden of proof at trial as to this affirmative defense must be taken into account in analyzing [Plaintiff's] motion for summary judgment." *Qwest Corp. v. City of Santa Fe*, 224 F.Supp.2d 1305, 1317 (D.N.M.2002), *aff'd in part and rev'd in part*, 380 F.3d 1258 (10th Cir.2004). Thus, the burden of proving that the Ordinance qualifies for the safe harbor codified in Section 253(c) falls squarely on the Municipality. *See N.J. Payphone Ass'n v. Town of W. N.Y.*, 299 F.3d 235, 240 (3d Cir.2002); *TC Sys. Inc. v. Town of Colonie*, 263 F.Supp.2d 471, 484 (N.D.N.Y.2003). As will become clear below, this allocation of burden is central to our ruling.

---

5. Formerly codified as Local Rule 311(12).

**1. Section 253(a)**

■ In its motion for summary judgment PRTC avers that the Ordinance is preempted by Section 253(a). Thus, the first inquiry is whether the challenged ordinance "prohibits or [has] the effect of prohibiting the ability of any entity to provide ... telecommunications service." 47 U.S.C. § 253(a). This Section has been interpreted to preempt not only those ordinances which prohibit the provision of telecommunications service, but also those that *may* have the *effect* of prohibiting said service. *Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1241 (9th Cir.2004). Furthermore, "[c]ourts have held that a prohibition does not need to be complete or 'insurmountable' to run afoul of § 253(a)." *TCG N.Y., Inc. v. City of White Plains*, 305 F.3d 67, 76 (2d Cir.2002)(*citing RT Communs., Inc. v. FCC*, 201 F.3d 1264, 1268 (10th Cir.2000)).

In support of its contention, PRTC avers that the annual 5% fee imposed by the Ordinance would render its business unprofitable, especially if other municipalities follow Guayanilla's lead and enact similar ordinances. PRTC further avers that it does not track gross revenues on a municipality-by-municipality basis (Docket # 59, ¶ 45). Therefore, it does not know exactly what revenue would be subjected to the fee. Moreover, PRTC argues that if each municipality were to impose a 5% fee, the total impact on PRTC would be roughly ten times greater than the current impact of the municipal license tax, which is 0.5%. PRTC estimates that the Ordinance would cost it about $60 million a year, or ten times the $6 million that PRTC currently pays in municipal license taxes (Docket # 59, ¶ 46). Furthermore, according to PRTC, the total of the recurring taxes that PRTC already pays to municipalities, which includes municipal license taxes, real property taxes, and personal property taxes, but excludes construction excise taxes, amounts to approximately $58 million annually (Docket # 59, ¶ 47). Finally, PRTC further avers that its net profit for the most recent fiscal year was about $70 million (Docket # 59, ¶ 48). Defendants have not controverted PRTC's numbers. Instead, they reiterate that PRTC cannot presently state whether payment of a 5% fee would make PRTC's overall business in Guayanilla unprofitable (Docket # 60, ¶¶ 46–48).

The Court finds that, although PRTC has not represented with exact accuracy whether the 5% fee would render its business unprofitable, it appears *prima facie* that the Ordinance may very well have that effect. The figures presented by PRTC, to wit, the estimated cost of the Ordinance at $60 million in comparison with PRTC's net profit of $70 million, support this finding. These numbers indicate that the Ordinance will have the effect of prohibiting PRTC's ability to provide telecommunications service in Guayanilla. *See e.g., AT & T Communs. of the S.W., Inc. v. City of Dallas*, 8 F.Supp.2d 582, 593 (N.D.Tex.1998)(finding that "any fee that is not based on AT & T's use of City rights-of-way violates § 253(a) of the FTA as an economic barrier to entry"), *vacated as moot*, 243 F.3d 928 (5th Cir.2001); *Peco Energy Co. v. Township of Haverford*, 1999 WL 1240941, *8, 1999 U.S. Dist. LEXIS 19409 *26 (E.D.Pa.1999)(determining that "the Ordinance imposes fees of uncertain amounts, a fact which, by itself, may serve as a significant barrier to entry"). Based on this information, and with the cumulative effect of future similar municipal ordinances in mind, we find that the Ordinance may very well result in making the offering of telecommunications service prohibitive. *See Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1241 (9th Cir.2004)(noting that "the district court failed take into consideration the cumulative effects of the Cities' regulatory

schemes"). Accordingly, we turn to analyze whether the Ordinance is saved by the safe harbor proviso.

## 2. Section 253(c)

■ PRTC avers that the Ordinance does not fall under the safe harbor provision because it does not meet the minimum standards set in the Court's Opinion and Order for a gross revenue fee to survive scrutiny.[6] In support of its contention, PRTC has brought forth evidence demonstrating that the Municipality: (1) does not know what rights-of-way are under its control, as opposed to private rights-of-way or Commonwealth rights-of-way; (2) does not know the relative occupation of its own rights-of-way by various providers; (3) did not study either the use or value of the rights-of-way under its control or the revenues that would be generated by a gross revenue fee as applied to particular carriers; and (4) made no attempt to relate the funds that would be generated by a five percent (5%) gross revenue fee to the use of rights-of-way in general, let alone the usage of particular carriers (Dockets ## 59 & 63). With respect to the latter, the Municipality admitted that a carrier that used only one foot of municipal rights of way would be subject to the same gross revenue fee as a carrier that used dozens of linear miles of right of way throughout Guayanilla (Docket 59, ¶ 19 admitted at Docket # 60 ¶ 19).

On the other hand, Defendants aver that the only matters pending before the Court are: (1) whether the 5% fee is directly related to the actual use of the Municipality's rights of way; (2) whether the 5% fee, along with the imposition of the Municipal license taxes, constitutes double taxation; and (3) the Court's inquiry as to what

amount constitutes exactly 5% of Plaintiff's gross revenue within the Municipality. On these issues, the Municipality answers the first question in the affirmative, the second in the negative, and states that "it is unclear how the determination of PRTC's revenue subject to the 5% fee will serve to justify the Ordinance." (Docket # 65, p. 4).

Notwithstanding the foregoing, the Municipality has admitted the following material facts:

The Municipality did not conduct or cause to be conducted any cost study or economic study of any kind concerning the cost or value of its rights of way . . . . (SUF # 10).

The Municipality has no information regarding the use of the rights of way by companies purportedly subject to the Ordinance, including which companies are operating, where these companies are operating, or how much of the rights of way these companies are using. The Municipality did not conduct or cause to be conducted any study or examination of the extent of such use prior to enacting the Ordinance. (SUF # 11).

The Municipality did not calculate the gross revenues of the carriers allegedly impacted by the Ordinance, and thus cannot know what the fiscal impact of the Ordinance will be. (SUF # 12).

The Municipality does not know whether carriers subject to the Ordinance use similar or different amounts of the rights of way; the Municipality's lack of knowledge is so complete that it is unable to state whether all carriers use an identical amount of rights of way or not. (SUF # 13).

---

**6.** In our previous Opinion and Order, while we declined to hold the Ordinance to be *per se* illegal, we expressed several concerns with the Ordinance and the requirement that the fees charged by the Municipality: (1) serve to recoup out-of-pocket expenses resulting from the use of the rights-of-way and, (2) constitute reasonable rent for the use of said rights in light of Section 253(a)'s "fair and reasonable compensation" language (Docket # 16, p. 15).

The Municipality does not know to what extent carriers subject to the Ordinance use rights of way that do not belong to the Municipality, and are instead administered by the commonwealth or owned by private parties. The Municipality does not know whether carriers covered by the Ordinance use private or commonwealth administered rights of way at all. (SUF # 15).

The Municipality did not attempt to calculate the costs of its administration and maintenance of the rights of way prior to enacting the Ordinance, has not kept an accounting of the amounts that it has spent annually on administration and maintenance of the rights of way, and cannot even give a rough estimate of this amount. (SUF # 16).

The cost of maintaining the rights of way does not vary based on the number of calls or electronic signals carried by equipment located in the rights of way. (SUF # 17).

The fee in the Ordinance applies to the entire revenue derived from any call that uses a portion of the Municipality's rights of way, no matter how small this use of the rights of way is in terms of the overall distance that the call traverses. It is immaterial whether a call uses 1 foot or 100 feet of the Municipality's rights of way. The fee charged (five-percent of the gross revenue derived from the call) is the same in all cases.(SUF # 19).

The Ordinance does not apply to the revenues generated solely by the use of private rights of way and/or rights of way under the control of the commonwealth government. (SUF # 21).

The Ordinance does not provide for any set-off or reduction in amounts due under the Ordinance for other amounts paid by a carrier for the use of the rights of way. (SUF # 22).

(Dockets ## 59–60).

Given these uncontested facts, it appears that the evidence discovered contravenes the Court's holding which requires that the 5% fee be directly related to the actual use of the public rights-of-way and the resulting costs from such use (Docket # 16, p. 8). In light of the undisputed facts stated above, the Municipality cannot sustain its burden of proving that the 5% fee constitutes "fair and reasonable compensation" as required by Section 253(c) and as defined in our previous Opinion and Order. On this particular point, citing no legal authority, the Municipality insists that it is not "obligated to 'rationalize' the 5% fee it seeks to collect from PRTC before it seeks to assert its entitlement to compensation pursuant to section 253(c); it may do so afterwards." (Docket # 65, p. 6). However, discovery has concluded, and the Municipality has still not "rationalized" its chosen fee. This statement ignores the fact that the Municipality does bear the burden of establishing that its chosen fee constitutes "fair and reasonable compensation."

The Municipality has not presented the Court with the basic element of its costs in maintaining the public rights-of-way. Absent evidence of costs, the Court cannot determine whether the Ordinance results in fair and reasonable compensation as opposed to monopolistic pricing. The Municipality also does not know which providers use the Municipality's rights of way and to what extent.[7] This is contrary to

---

7. Through discovery and under a protective order, the Municipality received PRTC's network maps, as well as a plethora of other documents (Docket # 51). Nonetheless, the Municipality continues to ignore the exact location where PRTC makes use of its external network and insists that such knowledge is solely within Plaintiff's domain (Docket # 65, p. 6).

our finding that the fees charged by a municipality need to be related to the degree of actual use of the public rights-of way. (Docket # 16, p. 13). The Municipality attempts to solve this problem by repeating that the Ordinance does not apply to revenues generated solely by the use of private rights-of-way and/or rights-of-way under the control of the Commonwealth. Yet, this creates a further problem. At his deposition, Adán Feliciano–Irizarry, a Municipal employee and a designated Rule 30(b)(6) witness, stated that the Municipality "do[es] not have a map that indicates to. us where each and every one of [the rights-of-way] are." (Docket # 59–Attachment # 4, pp. 40–41). The Municipality is instead relying on PRTC to inform it what calls are subject to the fee. Thus, it is evident that the Municipality intends to delay justifying its Ordinance until after it begins to receive payments from the different providers. We refuse to uphold the fee on the off chance that it might prove to be fair and reasonable. That much we forewarned in our previous Opinion and Order where we made clear that "courts have a duty to insure that any fees charged by a municipality only include amounts which 1) serve to recoup out-of-pocket expenses resulting from the use of the rights-of-way and, 2) constitute a reasonable rent for the use of said rights." (Docket # 16, p. 15).

The evidence adduced also supports the Court's earlier concern with respect to double liability since carriers are subjected to a number of taxes while the Ordinance evinces no offset for the same. First, the Municipality collects revenue through an excise tax when carriers build in their rights-of-way. Second, the Municipality collects revenue annually on the value of PRTC's network through a network property tax that imposes a set charge on the size of the network itself. Third, the Municipality collects the municipal license tax from PRTC based on the amount of revenue that PRTC generates that is attributable to the Municipality under a geographic formula specified in the Commonwealth law. With this income, the Municipality could be double-dipping into the same economic event or property. In response, the Municipality alleges that nothing prevents it from collecting property tax and rent. However, in this case, the Telecom Act limits the Municipality's ability to do so by setting the ceiling at "fair and reasonable compensation." That is not to say that the Municipality can only recover its costs. However, the costs are an essential part of the equation. Without the costs part of the calculus, and the possible offset to those costs by other taxes imposed on carriers, we must find that the Municipality has not met its burden of establishing that the Ordinance meets the safe harbor requirements.[8]

### 3. Law 213

■ Given the finding above, it appears that the Ordinance might be in contravention of Puerto Rico's own Telecommunications Act, Law 213. In our previous Opinion and Order, we interpreted Law 213 as consonant with Section 253(c). However, there is one noticeable distinction which

---

8. The Ordinance also fails the "totality of the circumstances" test adopted by the Sixth Circuit in *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 625 (6th Cir.2000). Not only does the Municipality not have any knowledge as to the first element, the link to "the amount of use contemplated," it is uncontested that there is no evidence indicating that any "other providers would be willing to pay" what

the Ordinance charges or some approximation, and PRTC has never indicated a willingness to pay said fee. *TCG Detroit v. City of Dearborn*, 16 F.Supp.2d 785 (E.D.Mich.1998), *aff'd by*, 206 F.3d 618 (6th Cir.2000). Instead, PRTC has repeatedly asserted that the Ordinance, especially if adopted by other municipalities, would "render doing business unprofitable." *Id.*

merits comment. In Law 213, municipalities are expressly permitted to collect "reasonable fees." 27 L.P.R.A. § 269g. In other words, the language is not inserted as a savings clause but as an express grant to municipalities and other entities. We have already concluded that, under the scenario before us, the Ordinance does not comply with the "fair and reasonable compensation" requirement. Accordingly, it would also appear to contravene Law 213's "reasonable fees" condition.

Finally, we recognize that the questions before the Court bear heavily on other municipalities, affecting the ordinances they each may seek to enact. Therefore, it appears that the better approach to resolution of regulatory conflicts between municipalities and telecommunications service providers lies in the joint and uniform resolution of such questions of law, rather than the piecemeal approach of the instant action. In doing so, municipalities and telecommunications service providers should explore the possibility of seeking relief from the agency specifically created by Law 213 to regulate telecommunications service in Puerto Rico, the Puerto Rico Telecommunications Regulatory Board. 27 L.P.R.A. § 267.

**Conclusion**

For the reasons set herein, we find that the Ordinance is preempted by the Telecom Act and cannot stand. Accordingly, PRTC's motion for summary judgment is **GRANTED** and the case will be **DISMISSED WITH PREJUDICE.** Judgment will be entered declaring the Ordinance null and void.

**SO ORDERED.**