# United States Court of Appeals
## For the First Circuit

No. 05-1400

PUERTO RICO TELEPHONE COMPANY, INC.,

Plaintiff, Appellee,

v.

MUNICIPALITY OF GUAYANILLA
and THE HONORABLE EDGARDO ARLEQUÍN VÉLEZ,
MAYOR OF THE MUNICIPALITY OF GUAYANILLA,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Alfredo Acevedo Cruz, with whom Law Offices of Pedro E. Ortiz Álverez, PSC were on brief, for appellants.
Andrew G. McBride, with whom John E. Barry, Joshua S. Turner, and Wiley Rein & Fielding LLP were on brief, for appellees.
Eyck O. Lugo, with whom Cristina S. Belaval-Burger and Martínez Odeall & Calabria were on brief, for amicus curiae Municipality of Caguas.

June 7, 2006

**LIPEZ**, **Circuit Judge**.  This appeal requires us to apply § 253 of the Federal Telecommunications Act ("TCA"), 47 U.S.C. § 253, which sets limits on the authority of state and local governments to regulate telecommunications providers.  The Municipality of Guayanilla ("the Municipality") enacted an ordinance imposing a 5% gross revenue fee on telecommunications providers for their use of public rights of way[1] within the Municipality.  Puerto Rico Telephone Company ("PRTC") filed suit against the Municipality and Mayor Edgardo Arlequín-Vélez in federal district court, seeking a declaratory judgment that the ordinance is preempted by TCA § 253.  PRTC also argued that the ordinance is preempted by the Puerto Rico Telecommunications Act, Law No. 213 of September 12, 1996, 27 P.R. Laws Ann. § 265 ("Law 213").  The district court granted PRTC's motion for summary judgment, holding that the ordinance was preempted by § 253.  We affirm.

## I.

On November 1, 2001, Mayor Arlequín-Vélez signed into law Ordinance No. 14, Series 2001-2002, to "regulate and establish charges for the use and maintenance of the rights of way of public properties and utilities of the Municipality of Guayanilla."

---

[1] The typical "use of public rights of way" by telecommunications providers includes, for example, the placement of utility poles on public property and the installation of conduits and other equipment under public streets.

Ordinance No. 14 required telecommunications providers to pay a monthly fee, consisting of 5% of their gross revenues earned from doing business in the Municipality.  Under Ordinance No. 14, the 5% fee appeared to apply to "1) revenue from calls within the Municipality; 2) revenue from calls originated from a phone within the Municipality and received elsewhere; and 3) revenue from calls originated elsewhere and received within the Municipality."  P.R. Tel. Co. v. Municipality of Guayanilla, 283 F. Supp. 2d 534, 545 (D.P.R. 2003) ("P.R. Tel. Co. I").

On June 13, 2002, PRTC was served with a letter from the Finance Director of the Municipality, asking PRTC to pay the amount due pursuant to Ordinance No. 14 from November 1, 2001 to date.  On August 6, 2002, PRTC filed an action in federal district court against the Municipality and Mayor Arlequín-Vélez seeking a declaratory judgment that the ordinance was preempted by TCA § 253.  PRTC also argued that the ordinance was preempted by Law 213, the state law counterpart of the TCA.

The Municipality filed a motion to dismiss PRTC's complaint, arguing that Ordinance No. 14 was permissible under TCA § 253 and Law 213 because the 5% gross revenue fee was "fair and reasonable compensation"[2] as a matter of law.  The district court denied the motion, stating that the fee may violate § 253 and Law

_____

[2] This language refers to § 253(c) of the TCA, discussed in detail in Part II.B.2 of this opinion.

213 and that discovery was necessary because "the parties are yet to present any concrete evidence on the fairness of the price being charged." P.R. Tel. Co. I, 283 F. Supp. 2d at 545. The parties conducted discovery. PRTC filed a motion for reconsideration of the motion to dismiss, arguing that it was entitled to declaratory relief. PRTC also filed a motion for summary judgment.

During the pendency of the proceedings, the Municipality amended Ordinance No. 14 by enacting Ordinance No. 40.[3] Under

_____

[3] Ordinance No. 40 imposes

> a charge of five percent (5%) of the gross income from any invoicing that the telecommunications services may have for telephone calls originating in the Municipality of Guayanilla and which make use of the rights of way of said municipality. . . .
>
> The income subject to the payment of five percent (5%) . . . shall be calculated from January 1st through December 31st of every year. On or before the April 15th subsequent to said calendar year, the telecommunications providers must submit to the Municipality of Guayanilla an annual certification of its income, which are [sic] subject to the payment of five percent (5%) . . . . Together with said certification, the telecommunications service providers shall submit the corresponding payment of five percent (5%) . . . . .
>
> The telecommunications service providers shall submit . . . a certification specifying the locations where they make use or physical occupancy exists of the rights of way of the Municipality of Guayanilla.

Municipality of Guayanilla Ordinance No. 40, Series 2003-2004.

-4-

Ordinance No. 40, the 5% fee on gross revenues applies only to revenue from calls originating within the Municipality. Ordinance No. 40 also replaces Ordinance No. 14's monthly reporting requirement with an annual reporting requirement and requires telecommunications providers to certify places within the Municipality where they use or physically occupy rights of way controlled by the Municipality.

On January 28, 2005, the district court granted summary judgment in favor of PRTC and denied PRTC's motion to reconsider the motion to dismiss as moot. Based on its review of the summary judgment record, the district court concluded that Ordinance No. 40 violates § 253(a) because the estimated cost to PRTC under the ordinance, particularly if other municipalities adopt similar ordinances, "may very well result in making the offering of telecommunications service prohibitive." P.R. Tel. Co. v. Municipality of Guayanilla, 354 F. Supp. 2d 107, 111 (D.P.R. 2005) ("P.R. Tel. Co. II"). The district court then concluded that the ordinance was not saved by the safe harbor provision of § 253(c) because the Municipality did not meet its burden of establishing that its chosen fee constituted "fair and reasonable compensation." Id. at 112. The district court entered judgement declaring Ordinance No. 40 null and void. The Municipality and Mayor Arlequín-Vélez appeal.

We review the grant of a summary judgment motion de novo. Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005). Summary judgment is proper "if the record, read favorably to the non-moving party, reflects no genuine issues of material fact and the undisputed facts indicate that the movant is entitled to judgment as a matter of law." Id.

Appellants raise three main arguments. First, they argue that the district court erred in determining that PRTC established that Ordinance No. 40 violates TCA § 253(a). Second, they argue that the district court improperly placed the burden of establishing the applicability of the "safe harbor" provision of § 253(c) on the appellants. Third, they argue that the district court misapplied the appropriate test for determining whether Ordinance No. 40 is "fair and reasonable" under § 253(c).

In response, PRTC argues that the district court correctly applied the TCA in concluding that federal law preempted Ordinance No. 40. PRTC also argues that, in the alternative, we can affirm the judgment based on Law 213's preemption of the ordinance. See Ingram v. Brink's, Inc., 414 F.3d 222, 228 (1st Cir. 2005) (explaining that we may affirm a district court's judgment on the basis of "any ground manifest in the record" (internal quotation marks and citations omitted)). We examine that contention first.

## A. Law 213

Courts have applied different principles in approaching preemption claims based on both the TCA and state law. Citing constitutional avoidance concerns, some courts have held that they should first decide whether an ordinance is preempted by state law before considering whether it is preempted by the TCA. See Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1267 n.7 (10th Cir. 2004) ("Because federal preemption of a state or local law is premised on the Supremacy Clause of the United States Constitution and because of the longstanding principle that federal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided, we first decide whether the ordinances are preempted by [] state law before considering whether they are preempted by § 253." (internal quotation marks and citation omitted)); BellSouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1176 (11th Cir. 2001) (same); Bell Atl. Md., Inc. v. Prince George's County, 212 F.3d 863, 866 (4th Cir. 2000) (vacating and remanding case, concluding that district court committed reversible error "by deciding the constitutional question of preemption in advance of considering the state law questions upon which the case might have been disposed of").

By contrast, one court has stated that the doctrine of constitutional avoidance is inapplicable to questions of federal preemption. See N.J. Payphone Ass'n v. Town of W. N.Y., 299 F.3d

235, 239 n.2 (3d Cir. 2002).  Thus, as that court explains, it is appropriate in some circumstances to decide a case based on federal preemption notwithstanding state law claims:

> [T]he basic question involved in [preemption claims under the Supremacy Clause] is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes.  For this reason, preemption questions are treated as "statutory" for purposes of our practice of deciding statutory claims first to avoid unnecessary constitutional adjudications. . . .
>
> While principles of federalism and comity are to some extent implicated, we are not convinced that they are better served by ruling on a state law issue intimately concerned with local budgeting and the apportionment of powers between state and local governments than by interpreting a federal statute that was expressly intended by Congress to preempt certain types of local ordinances touching on issues within its power to regulate.  Therefore, we see no reason to address the state law issues, which have not been extensively briefed, in preference to the TCA claim that is the focus of this appeal.

Id. (internal quotation marks and citations omitted).

This case does not require us to adopt definitively either of these approaches.  Law 213 states that "departments, agencies, public corporations, municipalities, and political subdivisions of the Government of Puerto Rico may charge reasonable fees for the use of their properties, rights of way and easements pursuant to the regulations of the Puerto Rico Telecommunications Regulatory Board and the federal laws and regulations applicable."

-8-

27 P.R. Laws Ann. 269g.[4] Although the district court observed that "the Ordinance might be in contravention of Puerto Rico's own Telecommunications Act, Law 213," P.R. Tel. Co. II, 354 F. Supp. 2d at 115, the district court aptly explained that the state law at issue

> was created precisely in response to the [TCA]. As such, it is most reasonable to assume that the allowance of a "reasonable fee" in Law 213 was intended to go hand in hand with the equivalent provision in the [TCA]. Under these circumstances, we understand that the analysis to be made of the definition of what is a "reasonable fee" or a "fair and reasonable compensation" is identical under both Commonwealth and federal law. Accordingly, and in the absence of any Commonwealth precedent interpreting this particular section of Law 213, we will proceed to resolve this question on the basis of the existing federal case law.

P.R. Tel. Co. I, 283 F. Supp. 2d at 539. We find this approach appropriate. Law 213 appears to permit municipalities to enact ordinances that will be consistent with the TCA. As the district court reasoned, it therefore makes sense to resolve this case on the basis of federal law. We therefore consider whether the TCA preempts Ordinance No. 40.[5]

---

[4] Neither party cited any Commonwealth case law interpreting the term "reasonable fees" in this provision, and the district court found no such precedents. Furthermore, according to the parties, the Puerto Rico Telecommunications Regulatory Board has not yet established regulations pursuant to Law 213.

[5] For the first time on appeal, PRTC raises another state law claim, arguing that the Municipality had no power under Commonwealth law to assess fees for the use of rights of way at the

**B.   Preemption by the TCA**

We have acknowledged, without resolving, the difficult question of whether any section of the TCA provides a private cause of action.  See Cablevision of Boston, Inc. v. Public Improvement Comm'n, 184 F.3d 88, 99 (1st Cir. 1999) ("It is not clear . . . whether Congress intended FCC preemption to be the sole means of enforcing § 253(a) and (b), or, if a private cause of action does exist to enforce either of these subsections, whether the FCC is intended to have primary jurisdiction" or "whether the proper cause of action for a § 253(c) claim [assuming a private cause of action exists] is created by § 253(c) itself or arises from some other source.").   Other circuits have addressed this issue.   See BellSouth Telecomms., Inc., 252 F.3d at 1191 (holding that "a private cause of action in federal district court exists under § 253 to seek preemption of a state or local statute, ordinance, or other regulation only when that statute, ordinance, or regulation purports to address the management of the public rights-of-way, thereby potentially implicating subsection (c)"); TCG Detroit v. City of Dearborn, 206 F.3d 618, 624 (6th Cir. 2000) (holding that "§ 253(c) of the Act authorizes a private right of action in

time it enacted Ordinance No. 40, citing our decision in Liberty Cablevision of P.R., Inc. v. Municipality of Caguas, 417 F.3d 216, 223 (1st Cir. 2005).  The appellants counter by arguing that Law 213 explicitly gave them the authority to enact the ordinance.  In any event, this issue was not raised before the district court and we will not consider it on appeal.  See P.R. Hosp. Supply, Inc. v. Boston Sci. Corp., 426 F.3d 503, 505 (1st Cir. 2005).

federal court for telecommunications providers aggrieved by a municipality's allegedly discriminatory or allegedly unfair and unreasonable rates"). We do not need to resolve this issue in this case, however, because PRTC brought this action to challenge Ordinance No. 40 under the Supremacy Clause. See City of Santa Fe, 380 F.3d at 1266 ("A party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action."); see also Wright Elec., Inc. v. Minn. State Bd. of Elec., 322 F.3d 1025, 1028 (8th Cir. 2003); Western Air Lines, Inc. v. Port Authority of New York & New Jersey, 817 F.2d 222, 225 (2d Cir. 1987). We proceed on that basis.

Congress enacted the TCA to ensure that telecommunications providers have competitive access to state and local telecommunications markets. See Cablevision of Boston, Inc., 184 F.3d at 97-98. At the same time, Congress "recognized the continuing need for state and local governments to regulate telecommunications providers on grounds such as consumer protection and public safety" and "to manage and demand compensation for the use of their rights of way." Id. at 98. The provisions of § 253 balance these interests, providing in relevant part:

> (a) In general
> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any

-11-

interstate or intrastate telecommunications service.

(b) State regulatory authority
Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority
Nothing in this section affects the authority of a State or local government to manage the public rights of way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights of way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d) Preemption
If, after notice and an opportunity for public comment, the [Federal Communications Commission] determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

47 U.S.C. § 253. The parties in this case focus on the impact of subsection (a), which limits the authority of state and local governments to regulate telecommunications providers, and subsection (c), a "safe harbor" provision that, notwithstanding the limits imposed by § 253(a), permits state and local governments to

enforce regulations that require fair and reasonable compensation for the use of public rights of way.  Specifically, the appellants argue that the district court erred in concluding that Ordinance No. 40 violates § 253(a) and is not saved by the safe harbor of § 253(c).  We discuss these two sections of § 253 in turn.

1.  Section 253(a)

It is well-established that § 253(a) "authorizes preemption of state and local laws and regulations expressly or effectively prohibiting the ability of any entity to provide telecommunications services."  Nixon v. Mo. Mun. League, 541 U.S. 125, 128 (2004) (internal quotation marks omitted); see also City of Santa Fe, 380 F.3d at 1269 ("[Section] 253(a) contains a clear expression by Congress of an intent to preempt local ordinances which prohibit the provision of telecommunications services."); N.J. Payphone Ass'n, 299 F.3d at 242 ("Section 253 expressly preempts state or local statutes, regulations, or other requirements that prohibit or have the effect of prohibiting market entry.").  Thus, under the Supremacy Clause,[6] any state or local

---

[6] The Supremacy Clause states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

law that is inconsistent with the requirements of § 253(a) will be null and void, unless it falls under one of the safe harbor provisions in § 253.  See City of Sante Fe, 380 F.3d at 1269.

The appellants argue that the district court erred in finding that Ordinance No. 40 violates § 253(a).  First, the appellants challenge the district court's conclusion that the cost estimates provided by PRTC are undisputed facts.  Second, they argue that, even if the estimates are undisputed, the district court should not have considered them in its § 253(a) analysis because the estimates are based on the speculative premise that all municipalities throughout Puerto Rico will adopt similar ordinances.  Finally, the appellants argue that, even if the estimates are proper considerations for the district court's § 253(a) analysis, the district court nonetheless erred in concluding that PRTC has demonstrated that Ordinance No. 40 violates S 253(a).  These arguments are unavailing.

i. Cost estimates as undisputed facts

The district court did not err by considering PRTC's estimates to be undisputed facts in analyzing the summary judgment motion.  Through deposition transcripts and other documents submitted with its motion for summary judgment, PRTC presented the following facts relevant to the § 253(a) analysis, which the appellants now challenge:  1) PRTC's annual profit from the most recent fiscal year was about $70 million; 2) if every municipality

in the Commonwealth were to impose ordinances with a 5% fee, the fees would cost PRTC approximately $60 million a year, ten times the $6 million that PRTC currently pays in municipal license taxes; and 3) the total amount of recurring taxes that PRTC already pays to municipalities (which includes municipal license taxes, real property taxes, and personal property taxes, but excludes construction excise taxes) is approximately $58 million annually. The district court noted that the "[d]efendants have not controverted PRTC's numbers" for purposes of summary judgment.

We agree. The appellants did not provide evidence of alternative estimates, challenge PRTC's method of estimating the impact of the ordinance fee, or offer an alternative basis for calculating the financial effect of the fee. Instead, the appellants merely argue in their briefs that PRTC's estimates are incorrect, without any evidence to support their claim. Thus, the appellants' arguments amount to conclusory and unsubstantiated denials of the facts set forth by PRTC. We therefore cannot conclude that the district court erred in finding PRTC's estimates to be undisputed. See Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997) ("Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact.").

-15-

ii.  Costs across all municipalities

PRTC provides telecommunications services throughout Puerto Rico.  PRTC does not -- and previously had never been required to -- track its gross revenues and profit on a municipality-by-municipality basis; indeed, part of its objection to the ordinance stems from the financial burden that changes to its accounting and records systems would entail.[7]  PRTC does have information on its gross revenues and profit from its services throughout Puerto Rico as a whole.  Thus, in arguing that Ordinance No. 40 violates § 253(a), PRTC relies on its estimates of the aggregate cost to PRTC if all municipalities impose a 5% gross revenue fee.

PRTC advances two arguments to explain why the district court properly considered these estimates as part of its § 253(a) analysis.  First, PRTC argues that the estimates reflect the legitimate concern that other municipalities are or will be adopting similar gross revenue fee requirements.  In its brief, PRTC cites three other municipalities in Puerto Rico that have already enacted ordinances that apply similar gross revenue fees to telecommunications providers.  The appellants acknowledged this fact during oral argument.  Given the interconnected nature of utility services across communities and the strain that the

_____

[7] PRTC tracks its revenue based on "study areas," which are not based on municipal boundary lines and do not indicate whether the revenue is generated from outgoing, as opposed to incoming, calls.

-16-

enactment of gross revenue fees in multiple municipalities would have on PRTC's provision of services, the Commonwealth-wide estimates are relevant to determining how the ordinance affects PRTC's "ability . . . to provide any interstate or intrastate telecommunications service."  47 U.S.C. § 253(a).

PRTC does not, however, rest its case solely on the notion that all other municipalities will follow the Municipality of Guyanilla's lead by enacting gross revenue fees.  It also argues that the Commonwealth-wide estimates serve as an indicator of how Ordinance No. 40 will affect the profitability of PRTC's operations within the Municipality itself.  Extrapolating from its Commonwealth-wide profit margin and the impact that a Commonwealth-wide 5% gross revenue fee would have on its overall profits (an 86% decline), PRTC argues that a similarly significant decline in the profitability of its operations within the Municipality would occur under Ordinance No. 40 alone.  Indeed, PRTC argues that the Commonwealth-wide figures may even underestimate Ordinance No. 40's effect.  As PRTC explains, "[g]iven that Guayanilla is a relatively small, rural municipality" and that it generally "costs more to provide services in rural or less heavily populated areas than it does in large urban centers," PRTC's "profit margin on services that it sells within the Municipality is likely <u>lower</u> than the company's overall, island-wide margins.  Accordingly, the cumulative figures submitted by PRT [i.e., an 86% reduction in

-17-

profits] may well <u>understate</u> the impact of the Municipality's 5% fee on PRT's operations" in the Municipality.

Taken in this sense, PRTC's estimates are an appropriate basis for analysis in this case. The estimates, which are uncontroverted, represent the best information readily available to either party by which to measure the impact of Ordinance No. 40 on PRTC's operations. The district court did not err by considering them as part of its analysis.

iii. Preemption of Ordinance No. 40 by TCA § 253(a)

Section 253(a) preempts laws that "may prohibit or have the effect of prohibiting" the provision of telecommunications services. 47 U.S.C. § 253(a). As the Federal Communications Commission ("FCC")[8] has explained, "in determining whether an ordinance has the effect of prohibiting the provision of telecommunications services, it 'considers whether the ordinance materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.'" <u>TCG N.Y., Inc.</u> v. <u>City of White Plains</u>, 305 F.3d 67, 76 (2d Cir. 2002) (quoting <u>Cal. Payphone Ass'n</u>, 12

---

[8] The FCC enforces certain provisions of the TCA. <u>See</u> 47 U.S.C. § 253(d) ("If, after notice and an opportunity for public comment, the [FCC] determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the [FCC] shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.").

F.C.C.R. 14191 (1997)). Courts have also noted that "a prohibition does not need to be complete or 'insurmountable' to run afoul of § 253(a)." Id.; see also City of Sante Fe, 380 F.3d at 1269 ("[A] regulation need not erect an absolute barrier to entry in order to be found prohibitive."). Applying these considerations to the facts, we conclude that PRTC has established that Ordinance No. 40 violates § 253(a).

The ordinance imposes a 5% gross revenue fee. PRTC presently pays a 0.5% municipal license tax on its gross revenues for doing business within the Municipality[9] and argues that Ordinance No. 40 will significantly increase its costs and reduce the profitability of its operations. While PRTC does not, as we previously noted, track its gross revenue and profits on a municipality-by-municipality basis, its Commonwealth-wide calculations demonstrate that the imposition of 5% gross revenue fees across all municipalities would present an additional cost of $60 million annually -- ten times the $6 million that PRTC already pays in municipal license taxes and more than double the amount that PRTC pays to municipalities for a variety of taxes and fees

---

[9] The municipal license tax is applied to revenue attributable to the municipality according to a formula specified in Puerto Rico law. The formula divides the amount of property owned or leased in a given municipality by the total amount of property that a company owns or leases in Puerto Rico, and multiplies the resulting percentage by the company's total gross revenue to determine the tax base in a given municipality. The municipality then selects the percentage tax rate.

combined. According to PRTC's calculations, the surge in costs would reduce PRTC's annual Commonwealth-wide profit by 86%.

We agree with PRTC that these figures indicate that Ordinance No. 40 will negatively affect PRTC's profitability. The impact of a Commonwealth-wide 5% gross revenue fee on PRTC's overall profitability would be significant, and, as PRTC argues, it is reasonable to conclude that the effect of Ordinance No. 40 on the profitability of its operations within the Municipality would be similarly, or perhaps even more, substantial. Moreover, as PRTC also notes, the multiple gross revenue fees it faces in other municipalities further strain its ability to provide telecommunications services. Thus, there is no reason to doubt that the ordinance's 5% gross revenue fee would constitute a substantial increase in costs for PRTC in a regulatory environment that is becoming increasingly costly due to the enactment of gross revenue fees by other municipalities.

The ordinance's certification requirements also present another set of costs for PRTC. PRTC would have to change its accounting and records procedures to calculate how much of its gross revenues comes from outgoing calls, originating in the Municipality, using public rights of way. PRTC's current accounting practices do not differentiate how much income is generated from outgoing calls in the Municipality, as opposed to incoming calls, or how many of those outgoing calls use the

Municipality's public rights of way, as opposed to private easements. Some features of PRTC's services make these calculations particularly difficult. For example, PRTC would have to devise a method for determining what portion of revenue generated from its unlimited local telephone service -- which charges a flat fee for outgoing and incoming calls -- would constitute revenue from outgoing calls alone.

Together, the ordinance's gross revenue fee and certification requirements place a significant burden on PRTC. We agree with the district court that PRTC has established that Ordinance No. 40 "materially inhibits or limits the ability" of PRTC "to compete in a fair and balanced legal and regulatory environment." TCG N.Y., Inc., 305 F.3d at 76 (internal quotation marks and citation omitted); see also City of Sante Fe, 380 F.3d at 1270-71 (concluding that costs imposed by a local ordinance, which "would nearly quadruple [the telecommunications provider's] cost of doing business," were "sufficient to show that the [ordinance's] rental provisions are prohibitive because they create a massive increase in cost"). Thus, we affirm the district court's holding that Ordinance No. 40 violates § 253(a). We must now consider whether the ordinance falls under the safe harbor of § 253(c).

2. Section 253(c)

Section 253(c) provides that "[n]othing in this section affects the authority of a State or local government to manage the

-21-

public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government."  47 U.S.C. § 253(c).  We have explained that this subsection "take[s] the form of [a] savings clause[], preserving certain state or local laws that might otherwise be preempted under § 253(a)."  Cablevision of Boston, Inc., 184 F.3d at 98.  However, we have noted that § 253(c) could be interpreted in two ways:

> One explanation is that Congress intended § 253(c) . . . to be a savings clause only. Under this interpretation, § 253(c) could only be used defensively, in the context of a § 253(a) challenge; the statute would simply not apply to local regulations that are not competitively neutral and nondiscriminatory but nonetheless do not constitute prohibitions on entry.
> Alternatively, the exclusion of § 253(c) from
> § 253(d) [which provides for FCC preemption] might reflect Congress's selection of a forum for § 253(c) claims, limiting jurisdiction to federal or state courts instead of forcing municipalities with limited resources to defend rights-of-way regulations and fee structures before the FCC in Washington, D.C. . . .  If this interpretation were correct, it would become necessary to decide whether the proper cause of action for a § 253(c) claim is created by § 253(c) itself or arises from some other source.

Id. at 99 (citations omitted).[10]  Under the first interpretation of

§ 253(c), a telecommunications provider could not challenge an

ordinance or regulation directly on the basis of § 253(c).  Id.

The telecommunications provider would have to establish that the

ordinance or regulation violates § 253(a), and then the burden

would shift to the state or local government to establish that the

safe harbor provision of § 253(c) applies.  Under the second

interpretation, § 253(c) could operate as an independent source of

claim as well as a safe harbor provision.  Id.  If a

telecommunications provider brought an action challenging an

ordinance directly under § 253(c), it would have the burden of

establishing that the ordinance violated § 253(c).

---

[10]  The Third Circuit has also noted, without resolving, the difficulties in interpreting § 253(c).  See N.J. Payphone Ass'n, 299 F.3d at 241 ("Although Sections 253(b) and (c) are framed as savings clauses, Section 253(d) speaks of 'violation' of (b) suggesting that it must impose some sort of substantive limitation independent of (a).  This also raises the possibility that Section 253(c), which is similarly phrased, contains a parallel limitation.").  The Sixth and Eleventh Circuits have come to differing conclusions on this point.  Compare BellSouth Telecomms., Inc., 252 F.3d at 1187, 1191 (concluding that "subsection (a) contains the only substantive limitations on state and local government regulation of telecommunications, and that subsections (b) and (c) are 'safe harbors,' functioning as affirmative defenses to preemption of state or local exercises of authority that would otherwise violate (a)," and thus remanding because the district court considered whether the ordinances "fell within the parameters of (c), but never addressed, in the first instance, whether the ordinances violated subsection (a)") with TCG Detroit, 206 F.3d at 624 (concluding that § 253(c) operates as a separate limitation on state and local governments, "authoriz[ing] a private right of action in federal court for telecommunications providers aggrieved by a municipality's allegedly discriminatory or allegedly unfair and unreasonable rates").

The appellants raise two arguments regarding the application of § 253(c) in this case. First, they argue that, insofar as PRTC has not established that the ordinance violates § 253(a), the district court improperly placed the burden of proof for demonstrating that the fee was "fair and reasonable compensation" on the appellants. Second, they argue that, assuming they do have the burden of establishing that the ordinance's 5% gross revenue fee on outgoing calls does fall under the safe harbor provision of § 253(c), they have met their burden. Both of these arguments are unpersuasive.

i. Burden under § 253(c)

Citing Cablevision of Boston, Inc., the appellants argue that, "[t]o the extent § 253(c) is viewed as . . . imposing an independent negative restriction on local authorities' choices regarding the management of their rights-of-way, the burden of proof to establish that the Municipality's § 253(c) fee is not fair and reasonable lies with[] PRTC." Thus, the appellants argue that the district court erred by placing the burden on them.

The appellants' argument is predicated on its assertion that the district court erred in concluding that the ordinance violates § 253(a). If the appellants were correct on this point, we would have to consider whether PRTC could challenge the ordinance as being preempted directly under § 253(c). However, because we affirm the district court's holding that PRTC has

established that Ordinance No. 40 violates § 253(a), we need only consider whether the ordinance meets the § 253(c) safe harbor provision, not whether § 253(c) would provide an independent basis for preemption in this case. See N.J. Payphone Ass'n, 299 F.3d at 241 ("[T]here is . . . no need to resolve [the scope of preemption under § 253(c)] at this time. As discussed below, the operation of Section 253(a) is sufficient to preempt the Ordinance in this case and it does not fall within the Section 253(c) safe harbor."). In this context, the question of burden becomes more straightforward. We join our sister circuits in holding that, once the party challenging a regulation or ordinance establishes that it violates § 253(a), the burden is properly on the state or local government seeking the safe harbor to establish that § 253(c) applies. See City of Santa Fe, 380 F.3d at 1273 n.10; N.J. Payphone Ass'n, 299 F.3d at 240; Bell South Communications, Inc., 252 F.3d at 1192; see also In re the Petition of Minnesota, 14 F.C.C.R. 21697, 21704 n.26 (1999) ("Although the party seeking preemption bears the burden of proof that there is a violation of section 253(a), the burden of proving that a statute, regulation, or legal requirement comes within the exemptions found in sections 253(b) and (c) falls on the party claiming that exception applies.").

ii. "Fair and reasonable compensation" under § 253(c)

The appellants next argue that they have demonstrated that the ordinance's 5% gross revenue fee on outgoing calls does

fall under the safe harbor provision of § 253(c) as securing "fair and reasonable compensation." 47 U.S.C. § 253(c). Specifically, the appellants point out that the 5% gross revenue fee applies only to outgoing calls that make use of public rights of way. By crafting the ordinance in this manner, the appellants argue, the Municipality "ensures an effective distribution of resources, whereby it collects compensation depending on the use a provider gives to the public rights-of-ways."

The TCA does not define the phrase "fair and reasonable compensation" and the parties disagree over whether a gross revenue fee can ever satisfy this requirement. PRTC argues that the term "compensation" indicates that any fees imposed by state or local law must be limited to the recovery of costs (for maintenance and repair of public rights of way, such as sidewalk and street repair near telephone poles and equipment), which a gross revenue fee is not tailored to do. The appellants argue that the term "compensation" encompasses both cost recovery and the notion of "rent" for the use of public rights of way, and thus a gross revenue fee can be appropriate. The district court, after carefully reviewing decisions interpreting the terms "fair and reasonable compensation," concluded that "the most favored interpretation requires that the fees charged by a municipality be related to the degree of actual use of the public rights-of-way, but need not be limited to recoupment of the added costs to the

municipality resulting from such use." P.R. Tel. Co. I, 283 F. Supp. 2d at 543.

Among the courts that have reached the issue, we agree that most have not found gross revenue fees or other non-cost based fees to be per se invalid under § 253(c). See, e.g., Qwest Comms. Inc. v. City of Berkeley, 433 F.3d 1253, 1257 (9th Cir. 2006) ("[W]e decline to read [past precedent] to mean that all non-cost based fees are automatically preempted, but rather that courts must consider the substance of the particular regulation at issue."); TCG Detroit, 206 F.3d at 624-25 (employing a "totality of the circumstances test" to conclude that a gross revenue fee was "fair and reasonable compensation" under § 253(c)); see also City of Sante Fe, 380 F.3d at 1273 (discussing, without deciding, whether an ordinance's "compensation scheme" had to be limited to cost recovery under § 253(c)); TCG N.Y., Inc., 305 F.3d at 77-78 (discussing, without deciding, whether a gross revenue fee can constitute "fair and reasonable compensation" under § 253(c)).

We need not decide whether fees imposed on telecommunications providers by state and local governments must be limited to cost recovery. We agree with the district court's reasoning that fees should be, at the very least, related to the actual use of rights of way and that "the costs [of maintaining those rights of way] are an essential part of the equation." P.R. Tel. Co. II, 354 F. Supp. 2d at 114. In this case, the appellants

have presented no evidence of the Municipality's costs of maintaining the public rights of way. "Section 253(c) requires compensation to be reasonable essentially to prevent monopolistic pricing by towns. Without access to local government rights-of-way, provision of telecommunications service using land lines is generally infeasible, creating the danger that local governments will exact artificially high rates." TCG N.Y., Inc., 305 F.3d at 79. As the district court noted in this case, "[a]bsent evidence of costs, the Court cannot determine whether the Ordinance results in fair and reasonable compensation as opposed to monopolistic pricing." P.R. Tel. Co. II, 354 F. Supp. 2d at 113.

The appellants argue that, despite the lack of information about the costs of maintaining the public rights of way, they have nonetheless ensured that the ordinance's fee is "fair and reasonable compensation" because the fee applies only to revenue generated from calls that the providers certify are using public rights of way. There are two problems with this argument. First, the appellants concede that the 5% fee applies to the entire revenue derived from calls that use any portion of the rights of way, regardless of whether the call traverses over one inch or 100 feet of the public rights of way. Thus, the fee charged does not directly relate to the extent of actual use of public rights of way. Second, the appellants provide no rationale for why it is "fair and reasonable" for the Municipality to charge 5%, as opposed

to another percentage, of the revenue generated from these calls. The appellants provide no information or estimates regarding the amount of fees that they expect to collect through the ordinance. As the district court noted, "it is evident that the Municipality intends to delay justifying its Ordinance until after it begins to receive payments from the different providers. We refuse to uphold the fee on the off chance that it might prove to be fair and reasonable." P.R. Tel. Co. II, 354 F. Supp. 2d at 114.

The appellants note that the Sixth Circuit approved a 4% gross revenue fee after applying a "totality of the circumstances" test. TCG Detroit, 206 F.3d at 625. Under the "totality of the circumstances" test, courts examine "the extent of the use contemplated, the amount other telecommunications providers would be willing to pay, and the impact on the profitability of the business" to determine whether a fee scheme is "fair and reasonable." City of Sante Fe, 380 F.3d at 1272-73 (citing TCG Detroit, 206 F.3d at 625). In articulating this test, the Sixth Circuit approached § 253(c) as providing a direct cause of action for a telecommunications provider to challenge a regulation or ordinance, not as a safe harbor provision for a state or local government to save its regulation or ordinance once preemption under § 253(a) had been established. See TCG Detroit, 206 F.3d at 625.

We therefore question the usefulness of the second and third factors of the test in an analysis of § 253(c) as a safe harbor provision following a determination that the regulation or ordinance in question violates § 253(a). As a safe harbor provision, § 253(c) permits state and local governments to seek "fair and reasonable compensation . . . for the use of public rights-of-way," notwithstanding the limitations on their authority to regulate telecommunications providers as set forth in § 253(a). To give effect to this safe harbor provision, it appears that we must focus our inquiry (regarding what constitutes "fair and reasonable compensation") on examining the burdens imposed on the state or local government through the use of its public rights of way, rather than the burdens of the ordinance on the telecommunications providers, which is the focus of the § 253(a) analysis.

Thus, both the second and third factors in the "totality of the circumstances" test appear to miss the mark in the safe harbor context. The second factor (the amount that other telecommunication providers would be willing to pay) tells us more about telecommunications providers' resources and their desire to comply with local regulations than it does about why the fee chosen is "fair and reasonable compensation" for the state or municipality. The third factor (the impact on the profitability of the telecommunications provider) seems to conflate the concerns of

subsection (c) with those of subsection (a). Presumably, if a municipality demonstrated that the fee it imposes reflects the actual cost to the municipality for the use of its rights of way, it would be justified in charging this fee regardless of whether the amount would render the provision of telecommunications services unprofitable for a telecommunications provider.

Accordingly, we do not adopt the "totality of the circumstances" test in the context of a § 253(c) safe harbor analysis that follows a determination of preemption under § 253(a). Nevertheless, we note that even if we were to apply the three factors of the test to this case, Ordinance No. 40 would not fit within § 253(c)'s safe harbor. First, nothing in the record indicates that the ordinance accounts for the actual use of public rights of way. As previously noted, the 5% fee applies to the entire revenue derived from all calls that use any portion of the rights of way, regardless of the actual extent of use. Second, the appellants fail to point to any telecommunications providers who have been willing to pay the requested fee. Third, as we have previously noted, the fee would represent a significant increase in PRTC's costs, undermining the profitability of its operations. Thus, even under the test urged by the appellants, the ordinance fails to satisfy § 253(c).

**III.**

Congress enacted the TCA in an attempt to maintain "the balance . . . necessary to effectuate its intent to enhance competition and eliminate local monopolies while leaving room for reasonable regulation of issues of particular state and local concern." N.J. Payphone Ass'n, 299 F.3d at 245. Ordinance No. 40 disrupts this balance. While we recognize the difficult task that municipalities face when enacting ordinances that regulate public rights of way, we conclude that the ordinance in this case is preempted by § 253(a) of the TCA and is not saved by the safe harbor provision of § 253(c). The decision of the district court is therefore affirmed.

So ordered.