FILED

JUN 14 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   NV-15-1380-BDF |
| GIL KABILING and LINDA KABILING, | Bk. No.   2:11-bk-11458-LED |
| Debtors. | |
| DESERT PINE VILLAS HOMEOWNERS ASSOCIATION, | |
| Appellant, | |
| v. | **O P I N I O N** |
| GIL KABILING; LINDA KABILING, | |
| Appellees. | |

Argued and Submitted on May 19, 2016
at Las Vegas, Nevada

Filed – June 14, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Laurel E. Davis, Bankruptcy Judge, Presiding

Appearances:   Steven T. Loizzi, Jr. of Alessi & Koenig, LLC, argued for appellant Desert Pine Villas Homeowners Association; Malik W. Ahmad of the Law Office of Malik W. Ahmad argued for Appellees Gil Kabiling and Linda Kabiling.

Before:  BARASH,[1] DUNN, and FARIS, Bankruptcy Judges.

_____

[1]   Hon. Martin R. Barash, United States Bankruptcy Judge for the Central District of California, sitting by designation.

BARASH, Bankruptcy Judge:

Secured Creditor Desert Pine Villas Homeowners Association appeals from the bankruptcy court's order finding it in contempt for violating the section 524[2] discharge injunction and awarding compensatory damages in favor of debtors, Gil Kabiling and Linda Kabiling. We AFFIRM the bankruptcy court's judgment.

## FACTUAL BACKGROUND

**A. Prepetition Events and the Debtors' Chapter 7 Bankruptcy Case**

Appellees Linda Kabiling ("Linda")[3] and her then-husband, Gil Kabiling ("Gil," and with Linda, the "Debtors"), owned a condominium located in Las Vegas, Nevada (the "Property"), which was part of a common interest development. The Debtors used the Property as a rental property and resided elsewhere. The Property was subject to a Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") in favor of Appellant Desert Pine Villas Homeowners Association ("Desert Pines"). The CC&Rs require homeowners, such as the Debtors, to pay regular homeowners association ("HOA") assessments and grant Desert Pines a lien against each condominium unit for any delinquent assessments, late fees, interest, and collection fees and costs. At some point in time prior to filing their bankruptcy case, the

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] Because both of the Debtors retain the same surname, we refer to them by their first names to identify them. No disrespect is intended by their first name references.

2

Debtors became delinquent in paying assessments to Desert Pines and liens arose against the Property to the extent of those delinquencies. The Debtors received collection notices from Desert Pines, and from counsel for Desert Pines, Alessi & Koenig, LLC ("Alessi & Koenig").

On February 1, 2011, the Debtors filed a voluntary chapter 7 petition (the "Petition Date") along with a Statement of Intention asserting that they would abandon the Property. On their Schedule F, the Debtors listed a debt owed to "original creditor Desert Pine Villas / 6134 Pine Villa Ave. #103/HO #23141" for assessor's parcel number 138-11-517-007 in care of "Alessi & Koenig, LLC, 9500 W. Flamingo Rd., Suite 100, Las Vegas, NV 89147."

The Debtors received their discharge on June 28, 2011. A discharge order, including an "Explanation of Bankruptcy Discharge in a Chapter 7 Case" (the "Discharge Order"), was mailed to creditors on June 30, 2011, by the Bankruptcy Noticing Center. The Discharge Order includes the following admonition:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

Among the entities served with the Discharge Order was "Alessi & Koenig, LLC, 9500 W. Flamingo Rd., Suite 100, Las Vegas, NV 89147-5720."

///

///

3

**B. Post-discharge Events and the Filing of the Quiet Title Action**

Desert Pines nonjudicially foreclosed on its HOA liens in 2013 and thereby acquired title to the Property. On December 15, 2014, in the District Court for Clark County Nevada, Desert Pines, through its counsel, Alessi & Koenig, filed a complaint against the Debtors and three additional named defendants (the "Complaint") seeking to quiet title to the Property and confirm that it held good title to the Property based on its nonjudicial foreclosure in 2013 (the "Quiet Title Action"). The Complaint alleged that the Debtors were "the former record owners of the" Property, that Linda took title to the Property in 2005, and that Linda was indebted to Desert Pines:

> 22. Defendant Linda . . . failed to pay her regular assessments and further failed to comply with other requirements set forth in the CC&Rs and other related governing documents.
> * * *
> 30. Defendant Linda . . . failed to meet her obligations to pay assessments pursuant to CC&Rs and NRS 116, et al.

The Complaint also included a demand for attorneys' fees to be awarded against the Debtors and their co-defendants:

> 41. It has been necessary for Plaintiff to employ the legal services of [Alessi & Koenig], as duly licensed and practicing attorneys in the State of Nevada to file and litigate this action, and reasonable attorneys' fees should be awarded to Plaintiff, to be paid by Defendants.
> PRAYER FOR RELIEF
> WHEREFORE, Plaintiffs pray for judgment against Defendants and each them as follows:
> * * *
> 3. For reasonable attorneys' fees . . . .

Desert Pines served the Complaint on the Debtors, who thereafter retained counsel to respond on their behalf. The

4

Debtors' counsel sent a January 26, 2015 letter to Alessi & Koenig alleging that the filing of the Complaint violated the discharge injunction. Alessi & Koenig's first substantive response to this allegation consisted of an April 2, 2015 email from Steven Loizzi of Alessi & Koenig (the "A&K Email"), acknowledging that the Discharge Order applied to the prepetition HOA delinquency but denying that the Complaint violated the discharge injunction:

> THIS CASE DOES NOT SEEK MONEY, SET OFF, PROPERTY, OR ANYTHING ELSE FROM YOUR CLIENTS . . . our action is NOT intended to collect, recover, or offset any debt as a personal liability of the debtors . . . again, we are not trying to collect any debt from the debtors. The discharge eliminated the personal liability of the debtors for the HOA assessments . . . .

(Emphasis in original).

After reopening their bankruptcy case, the Debtors filed their motion to have Desert Pines found in contempt based on the filing and service of the Complaint (the "Debtors' Contempt Motion"). The bankruptcy court conducted an initial hearing on the Debtors' Contempt Motion on June 30, 2015, and thereafter conducted an evidentiary hearing on August 6, 2015 (the "Evidentiary Hearing"). The parties stipulated to the admission of various exhibits; both Debtors and Harold Barling, president of the board of directors of Desert Pines, testified. At the conclusion of the Evidentiary Hearing, the bankruptcy court took the matter under submission.

On October 20, 2015, the court issued its memorandum of decision finding that Desert Pines (1) knew of the existence and scope of the Discharge Order and (2) intended to file and serve the Complaint on the Debtors. The bankruptcy court determined

5

that the filing and service of the Complaint violated the Discharge Order because it was based on Desert Pines' prepetition relationship with the Debtors and included an attorneys' fee demand that appeared to arise out of discharged claims. The bankruptcy court found Desert Pines in contempt and held it liable for the Debtors' compensatory damages in the amount of $8,928.00. Desert Pines timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred when it determined that Desert Pines willfully violated the discharge injunction.

**STANDARDS OF REVIEW**

The bankruptcy court's decision to impose civil contempt sanctions for a violation of the discharge injunction is reviewed for an abuse of discretion. Nash v. Clark Cty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012). Under the abuse of discretion standard, the first step is to determine de novo whether the court applied the correct legal rule. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If it failed to do so, it abused its discretion. Mujica v. AirScan, Inc., 771 F.3d 580, 589 (9th Cir. 2014). If the court applied the correct legal rule, the second step is to determine whether the court's application of the law to the facts was: "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the

6

record.'" Id. (quoting Hinkson, 585 F.3d at 1262).

**DISCUSSION**

A discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [prepetition] debt as a personal liability of the debtor." § 524(a)(2). A violation of this discharge injunction is enforced through the court's civil contempt authority under section 105(a). Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002). The debtor has the burden of proving, by clear and convincing evidence, that the offending creditor knowingly and willfully violated the discharge injunction. ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006). The offending creditor acts knowingly and willfully if (1) it knew the discharge injunction was applicable and (2) it intended the actions which violated the injunction. Id.

With respect to the first prong, a creditor cannot be held in contempt for violating a discharge injunction unless it has actual knowledge of the injunction, which is a question of fact. ZiLOG, 450 F.3d at 1008. If the creditor disputes that it had such knowledge, an evidentiary hearing is required. Id. Actual knowledge of the discharge injunction does not end the inquiry, however, as the creditor also must be aware that its claim against the debtor was subject to the discharge injunction. Emmert v. Taggart (In re Taggart), 548 B.R. 275, 288 (9th Cir. BAP 2016). "Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based

7

inquiry which implicates a party's subjective belief, even an unreasonable one." Id.

With respect to the second prong, courts employ the same analysis regarding violations of the discharge injunction as they do with violations of the automatic stay. Id. The focus is on whether the creditor's conduct violated the injunction and whether that conduct was intentional; it does not require a specific intent to violate the injunction. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (citing Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996); and Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995)).

The bankruptcy court applied the correct legal standard in determining whether Desert Pines willfully violated the Discharge Order. The bankruptcy court expressly cited to ZiLOG and its progeny for the two-part test to determine whether the knowing and willful standard had been met. After conducting an initial hearing on the Debtors' Contempt Motion, the bankruptcy court conducted an evidentiary hearing at which the parties were allowed to present live testimony and submit stipulated documentary evidence. The evidentiary record in this case supports the bankruptcy court's ultimate conclusion that Desert Pines knew that the Discharge Order applied and that Desert Pines intended the actions that violated the discharge injunction.

**A. Desert Pines Knew That the Discharge Injunction Applied to its Prepetition Claims Against the Debtors.**

Desert Pines does not dispute that it had actual knowledge of the Discharge Order entered in the Debtors' bankruptcy case on

8

June 28, 2011. Desert Pines admits that the Debtors listed Alessi & Koenig on their Schedule F as an agent for Desert Pines with respect to the Property. The record is clear that Alessi & Koenig was served on June 30, 2011, by the Bankruptcy Noticing Center with a copy of the Discharge Order at Alessi & Koenig's address listed on Schedule F. Desert Pines admits that Alessi & Koenig received the Discharge Order and admits that Alessi & Koenig represents Desert Pines with respect to the Debtors and the Property. Indeed, at the Evidentiary Hearing, Desert Pines' president, Harold Barling, acknowledged that Desert Pines had been notified of the Debtors' discharge either directly or through Alessi & Koenig. The bankruptcy court's conclusion that Desert Pines had actual knowledge of the Discharge Order is supported by the record and is neither illogical nor implausible.

Desert Pines, moreover, does not assert that it believed that its prepetition claim against the Debtors was excepted from the discharge. There is ample evidence in the record that Desert Pines knew that the Discharge Order applied to its prepetition claims against the Debtors. The bankruptcy court quoted at length from the Discharge Order served on Alessi & Koenig regarding the scope of the injunction. At the Evidentiary Hearing, Mr. Barling testified that he knew that the entry of the bankruptcy discharge precluded Desert Pines from collecting delinquent sums owed by the Debtors. After filing the lawsuit, Alessi & Koenig sent an email to the Debtors' counsel which expressly states that the "discharge eliminated the personal liability of the debtors for the HOA assessments." These statements corroborate Mr. Barling's testimony that Desert Pines

9

knew that the Discharge Order meant Desert Pines could not try to collect the prepetition delinquent assessments from the Debtors. Thus, the bankruptcy court's conclusion that Desert Pines knew that the Discharge Order applied to its prepetition claims against the Debtors is supported by the record and is neither illogical nor implausible.

**B. Desert Pines Intentionally Filed the Complaint Which Violated the Discharge Injunction.**

    1. <u>Desert Pines Acknowledges That It Filed and Served the Complaint Against the Debtors</u>.

At the Evidentiary Hearing, Mr. Barling testified that Desert Pines retained Alessi & Koenig to file the Quiet Title Action and that the lawsuit was a prerequisite to obtaining title insurance to sell the Property. He also testified to his understanding that quieting title required providing notice of the quiet title action to the Debtors in the event they wished to intervene. During oral argument at the June 30, 2015 hearing, counsel for Desert Pines specifically admitted that Desert Pines filed the Complaint in the Quiet Title Action, that it named the Debtors as defendants, and that it sought recovery of attorneys' fees and costs. Thus, the record supports the bankruptcy court's conclusion that Desert Pines intended to file the Quiet Title Action. The only remaining question is whether the filing of the Complaint violated the Discharge Order.

    2. <u>The Complaint Violated the Discharge Injunction</u>.

Desert Pines argues that the Complaint could not have violated the Discharge Order because it sought only a declaration that it held good title to the Property and did not seek to collect, recover, or offset any of the delinquent prepetition HOA

10

assessments.

The mere filing of a complaint against a debtor by a prepetition creditor does not necessarily violate the discharge injunction. For example, pursuing a post-discharge lawsuit in which the debtor is named as a putative party to collect from a collateral source, such as an insurance policy or an uninsured employers' fund, does not violate section 524 provided "the plaintiff makes it clear that it is not naming the debtor as a party for anything other than formal reasons." Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 550 (9th Cir. BAP 2002) (citing Patronite v. Beeney (In re Beeney), 142 B.R. 360, 363 (9th Cir. BAP 1992)).

But that is not the case here. The Complaint repeatedly alleges that Linda failed to pay her HOA assessments to Desert Pines and utterly fails to mention that the Debtors' prepetition delinquencies had been discharged under section 524(a). Further, the Complaint makes no attempt to communicate that the Debtors were named only as putative parties, that no amounts were being sought from the Debtors, or that the only circumstance in which fees might be sought was if the Debtors elected to oppose the relief requested.[4] To the contrary, the Complaint alleges that Desert Pines was required to incur attorneys' fees to file the

---

[4] The bankruptcy court noted that Desert Pines' counsel could have contacted the Debtors prior to filing the Complaint to explain the quiet title relief and request that the Debtors file a "Disclaimer of Interest" with respect to the Property. Counsel rejected the suggestion because "there are thousands of these quiet title actions filed every single day . . . . No one does that in any situation where there's been a bankruptcy because it's only a title action." Hr'g Tr. (June 30, 2015) at 11:19-23.

11

action and prays for a fee award against each of the named defendants, including the Debtors. Nothing within the four corners of the Complaint indicates that Desert Pines was not seeking an attorneys' fee award from the Debtors.

Desert Pines argues that it should not be held in contempt because the Discharge Order does not prohibit it from seeking attorneys' fees in a post-discharge lawsuit against the Debtors. This argument is without merit. The argument is premised on (1) an incomplete description of the applicable law and (2) the incorrect assumption that the attorneys' fees asserted in the Complaint were clearly post-discharge debts.

A chapter 7 discharge releases the debtor from personal liability for debts arising "before the date of the order for relief under this chapter." § 727(b). A "debt" means a liability on a claim. § 101(12). While state law ordinarily determines whether a claim exists, federal law determines whether such claim arose prepetition or postpetition. SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.), 571 F.3d 826, 839 (9th Cir. 2009); ZiLOG, 450 F.3d at 1000.

The general rule in the Ninth Circuit is that "a claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim, not at the time the plaintiff is first able to file suit on the claim." O'Loghlin v. Cty. of Orange, 229 F.3d 871, 874 (9th Cir. 2000) (plaintiff's claims against debtor were discharged to the extent based on pre-discharge violations of the Americans with Disabilities Act despite plaintiff not receiving right-to-sue letter until post-discharge, but claims based on post-discharge violations

12

were not discharged).[5]

Desert Pines' demand for attorneys' fees in the Quiet Title Action appears to be based on prepetition events. The Complaint alleges: (1) Linda took title to the Property in 2005; (2) Linda failed to pay assessments; (3) by operation of the CC&Rs, Desert Pines obtained a lien against the Property to the extent of such delinquent assessments, late fees, interest, and collection fees and costs; and (4) Desert Pines foreclosed nonjudicially on the Property in 2013. Desert Pines does not dispute that the delinquent assessments arose prior to the Petition Date. Thus, the only relationship described in the Complaint between the Debtors and the Property is based on pre-discharge circumstances.

Moreover, the Complaint does not identify any postpetition conduct by the Debtors, any postpetition default by the Debtors, or any postpetition contract between Desert Pines and the Debtors on which the Quiet Title Action was based. It appears that -- other than the 2013 nonjudicial foreclosure -- the only events on which that action could be based took place prepetition. Thus, Desert Pines' demand for attorneys' fees in the Complaint appears to be based on those events and discharged obligations. Under O'Loghlin, Desert Pines' demand for attorneys' fees is reasonably construed as an attempt to collect a claim that arose

---

[5]   A narrow exception to this rule, not applicable here, recognizes that even if a creditor's underlying substantive claim against the debtor arose prepetition, postpetition attorneys' fees "are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise [postpetition] voluntarily 'return[s] to the fray'" of litigation commenced prepetition. Boeing N. Am., Inc., v. Ybarra (In re Ybarra), 424 F.3d 1018, 1026 (9th Cir. 2005).

13

pre-discharge.

It does not matter whether Desert Pines believed in good faith that including a demand for attorneys' fees in the Complaint would not violate the discharge injunction. Dyer, 322 F.3d at 1191; Taggart, 548 B.R. at 287. By including allegations regarding prepetition debts of the Debtors, failing to disclose that those debts were discharged, and failing to make explicit that the Debtors were named only as putative parties from whom no sums were sought, Desert Pines violated the discharge injunction.[6] The bankruptcy court did not abuse its discretion in reaching this conclusion and finding Desert Pines in contempt.

## CONCLUSION

For the reasons stated, we AFFIRM the bankruptcy court's judgment.

---

[6] In its opening brief, Desert Pines also complains that the Debtors' counsel "sent an extortion letter" to Alessi & Koenig allegedly in violation of the Rules of Professional Conduct. The relevance of Desert Pines' argument is unclear. Section 524(a) includes express anti-waiver provisions and therefore nothing a debtor does, or fails to do, post-discharge diminishes or abrogates the discharge injunction. Rooz v. Kimmel (In re Kimmel), 378 B.R. 630, 638 (9th Cir. BAP 2007) ("[T]he chapter 7 discharge is absolute and, in light of the anti-waiver provisions of § 524(a), does not admit of an equitable exception that would permit it to be waived by postdischarge conduct."); Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola), 328 B.R. 158, 172 (9th Cir. BAP 2005) ("The gravamen of our analysis is that § 524(a) eliminates the revival of the discharged debt as a remedy for postpetition misconduct.").

14